IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MIGUEL DORTA, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | NO. 3:23-cv-00892 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| SPECIALTYCARE, INC., ) | MAGISTRATE JUDGE HOLMES |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is Defendant SpecialtyCare, Inc.'s ("SpecialtyCare") Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. No. 44). Plaintiffs filed a response in opposition (Doc. No. 48), and SpecialtyCare filed a reply (Doc. No. 51). For the reasons discussed below, the motion will be **GRANTED** in part and **DENIED** in part.

### I. FACTUAL AND PROCEDURAL BACKGROUND

SpecialtyCare employs surgical neurophysiologists ("SNs") to provide intraoperative neuromonitoring services, which involve observing patients during surgery and alerting doctors to symptoms of abnormal brain and nerve functioning. (Doc. No. 40 ¶¶ 1-2). Named Plaintiffs Nathan Fuchs and Miguel Dorta are former SpecialtyCare employees who bring this collective action against SpecialtyCare on behalf of themselves and other SNS employed by SpecialtyCare. (*Id.* ¶¶ 139-140). Plaintiffs bring various claims against SpecialtyCare including kickback of wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216, wages that were not paid free and clear in violation of the FLSA, violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, unlawful restraint of trade, and unlawful liquidated damages provision.

Plaintiffs allege that entry-level SNs join SpecialtyCare through a year-long training program which includes in-person and online coursework, laboratory practicums, and practical training in the operating room. (*Id.* ¶¶ 3, 32). Plaintiffs also allege that in exchange for the training, SNs are required to sign a Training Repayment Agreement ("the Repayment Agreement") promising to reimburse SpecialtyCare for the cost of their training if their leave their jobs within three years. (*Id.* ¶¶ 5, 62). Plaintiffs state that although the training is completed within one year, the Repayment Agreement debt continues to grow for two more years and "amounts to an interest rate of approximately 25% on the principal cost of the training for an employee who resigns within one to two years of starting work" and "an interest rate of approximately 50% for an employee who resigns within two to three years of starting work." (Doc. No. 40 ¶ 65). Plaintiffs state that the Repayment Agreement debt is forgiven after 3 years of employment with SpecialtyCare. (*Id.* ¶ 66).

Plaintiffs contend that Miguel Dorta worked at SpecialtyCare as an SN from August of 2022 until December of 2022 and that on Dorta's last day of employment, SpecialtyCare sent him a letter requesting repayment of $15,000 for the training he received. (*Id.* ¶¶ 85, 100). Plaintiffs state that Dorta has not received additional communications from SpecialtyCare about the debt. (*Id.* ¶ 102). Plaintiffs contend that Plaintiff Nathan Fuchs was employed as an SN at SpecialtyCare from September of 2020 until February of 2022 and that after Fuchs resigned, SpecialtyCare informed him that he owed $25,000 for his SN training. (*Id.* ¶¶ 104, 120-121). Fuchs hired a lawyer who negotiated with SpecialtyCare to accept $15,000 for repayment of the debt in exchange for a general release signed by SpecialtyCare that released Fuchs from any claims that SpecialtyCare could bring against Fuchs related to his employment. (*Id.* ¶¶ 127-128).

On March 20, 2023, SpecialtyCare filed the pending motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. No. 44).

## II. STANDARD OF REVIEW

**A. Fed. R. Civ. P. 12(b)(1)**

Whether a court has subject-matter jurisdiction is a "threshold determination" in any action. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). This reflects the fundamental principle that "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)). The party asserting subject-matter jurisdiction bears the burden of establishing that it exists. *Ammons v. Ally Fin., Inc.*, 305 F. Supp. 3d 818, 820 (M.D. Tenn. 2018).

A motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction "can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 759 (6th Cir. 2014) (internal citation omitted). A facial attack challenges the sufficiency of the pleading and, like a motion under Rule 12(b)(6), requires the Court to take all factual allegations in the pleading as true. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816-17 (6th Cir. 2017) (citing *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)).

A factual attack challenges the allegations supporting jurisdiction, raising "a factual controversy requiring the district court to 'weigh the conflicting evidence to arrive at the factual predicate that subject matter does or does not exist.'" *Id.* at 817 (quoting *Gentek*, 491 F.3d at 330). When analyzing a factual attack as to standing, the court may undertake "a factual inquiry

3

regarding the complaint's allegations only when the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's claim." *Gentek*, 491 F.3d at 330. District courts reviewing factual attacks have "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.3d 320, 325 (6th Cir. 1990).

**B. Fed. R. Civ. P. 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id.* at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).[1]

---

[1] Generally, a court cannot consider matters outside the pleadings in a Rule 12(b)(6) motion. However, "courts may consider documents attached to a Rule 12(b)(6) or 12(c) motion without converting either into a summary judgment motion if the attached materials are: (i) 'referred to in the plaintiff's complaint and are central to [the] claims' or (ii) 'matters of public recrd.'" *Kassam v. Ocwen Loan Servicing, LLC*, 704 F. App'x 429, 432 (6th Cir. 17) (internal citations omitted). Here, the Repayment Agreement is referenced in the First Amended Complaint and it is central to the claims at issue. Accordingly, the Court considers the Repayment Agreement in its ruling on SpecialtyCare's motion.

### III. ANALYSIS

#### A. FLSA (Counts I and II)

Plaintiffs allege that SpecialtyCare engaged in an "illegal kickback" and failed to pay wages "free and clear" in violation of the FLSA.

Generally, the FLSA requires that employers pay employees hourly minimum wage. *In re: Amazon.Com, Inc. Fulfillment Ctr. Fair Lab. Standards Act (FLSA) and Wage and Hour Litig.*, 905 F.3d 387, 405 (6th Cir. 2018) (internal citation omitted). Plaintiffs' allegations are based on a FLSA regulation that requires wages to be paid "free and clear," which may not occur if an employee "'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee" such that the employee receives less than the minimum wage during a workweek. 29 C.F.R. § 531.35.

To prevail on a FLSA claim, a Plaintiff must prove that an employer-employee relationship existed, the employee's acts are within the coverage of the FLSA and the employer failed to pay minimum wage for the acts. *Simpson v. Baskin*, No. 3:17-CV-01077, 2018 WL 1070897, at *4 (M.D. Tenn. Feb. 26, 2018).

SpecialtyCare does not challenge the sufficiency of the pleadings as to the first two elements. Indeed, Plaintiffs pled sufficient facts to satisfy those two elements. (Doc. No. 40 ¶¶ 32, 36, 71, 78-80, 104-106, 142-143). Instead, SpecialtyCare challenges whether Plaintiffs have pled facts sufficient to support the third element of the FLSA claims – failure to pay minimum wage.

Plaintiffs allege that the possibility of SNs having to repay SpecialtyCare after leaving SpecialtyCare's employment results in a FLSA violation for wages already paid for their final workweeks. (Doc. No. 40 ¶¶ 145, 154-155). Specifically, Plaintiffs' FLSA claims allege violations of the FLSA under two theories: (1) the requirement of SNs to repay certain amounts if they fail

to complete 3 years of work for SpecialtyCare equates to an illegal kickback, which results in Plaintiffs being paid less than minimum wage; and (2) the same requirement means that Plaintiffs' minimum wages were not paid "free and clear." Both theories appear to be based on Department of Labor regulation 29 C.F.R. § 531.35. (*See* Doc. No. 45 at PageID # 256; Doc. No. 48 at PageID # 306).

### 1. Plaintiff Fuchs

Plaintiffs allege that following the end of his employment with SpecialtyCare, Nathan Fuchs agreed to repay $15,000 to SpecialtyCare in exchange for a release that prohibits SpecialtyCare from seeking any additional money from Fuchs relating to his employment with SpecialtyCare (Doc. No. 40 ¶ 128).

Plaintiffs presumably know what Fuchs was paid during his approximately 18 months working for SpecialtyCare and how many hours he worked. Plaintiffs also concede that the amount to be repaid by Fuchs is limited to $15,000. Yet, despite that knowledge, Plaintiffs fail to allege that Fuchs was paid less than minimum wage during his employment with SpecialtyCare, and thus, Fuchs fails to state a FLSA claim upon which relief can be granted. Because Fuchs fails to state a claim upon which relief can be granted, the Court need not address SpecialtyCare's mootness argument.

### 2. Plaintiff Dorta

Plaintiffs allege that Miguel Dorta worked for SpecialtyCare from July 2022 through December 2022 at an annual salary of $40,000, or $19.23 per hour. (Doc. No. 40 ¶¶ 78, 84, 100). After terminating Dorta, SpecialtyCare demanded payment of $15,000 for 5 months of training, which appears to be recoupment of almost all of Dorta's salary if the Court accepts his allegations as true.

6

SpecialtyCare argues that the repayment obligation is not a kickback – *i.e.*, recouping wages paid for the benefit of the employer – because SNs benefit from the training and are paid minimum wages while working for SpecialtyCare. SpecialtyCare argues that the recoupment of training costs through the Repayment Agreement simply offset the costs already expended when SNs fail to work for SpecialtyCare for 3 years. SpecialtyCare relies on several cases involving repayment of training costs by employees who left employment before a defined period ended. *Gordon v. City of Oakland*, 627 F.3d 1092 (9th Cir. 2010); *Bland v. Edward D. Jones & Co.*, 375 F. Supp. 3d 962 (N.D. Ill. 2019); *Bland v. Edward D. Jones & Co.*, No. 18-CV-1832, 2020 WL 1503574 (N.D. Ill. Mar. 30, 2020); *Milford v. Roehl Transp., Inc*, No. 22-CV-0879-BHL, 2023 WL 2503495, at *4 (E.D. Wis. Mar. 14, 2023). (Doc. No. 45 at PageID # 257-258).

In response, Plaintiffs attempt to distinguish those cases and argue that whether a repayment is designed for an employer to recoup a business expense is a fact-specific inquiry. Plaintiffs provide authority to support their position. *Parker v. Battle Creek Pizza, Inc.*, 600 F. Supp. 3d 809, 812 (W.D. Mich. 2022); *Hatmaker v. PJ Ohio, LLC*, No. 3:17-CV-146, 2019 WL 5725043, at *2 (S.D. Ohio Nov. 5, 2019); *Martin v. Petroeum Sales, Inc.*, No. 90-2453-4A, 1992 WL 439740, at *15 (W.D. Tenn. July 9, 1992); *Carmen v. Health Carousel, LLC*, No. 1:20-CV-313, 2023 WL 5104066, at *15 (S.D. Ohio Aug. 9, 2023); *Stein v. HHGREGG, Inc.*, 873 F.3d 523 (6th Cir. 2017). (Doc. No. 48 at PageID # 306-310).

This issue boils down to whether the reimbursement included in the Repayment Agreement constitutes "training expenses" that primarily benefit SpecialtyCare or the SNs. Plaintiffs allege that the specific amounts in the Repayment Agreement that an employee must repay over time increase over the term of employment even though training is completed within the first year of employment and, thus, that those amounts are for SpecialtyCare's benefit.

7

The Court cannot make a determination on this issue at the pleadings stage, but instead must accept as true the Plaintiffs' allegations. In doing so, the Court finds that Plaintiff Dorta has pled facts sufficient to state a claim under the FLSA assuming the repayment qualifies as a "kickback" such that it offsets wages. (Doc. No. 40 ¶¶ 65-69, 95-96, 100, 121-125, 144, 152). Given that Counts I and II are both FLSA claims based on the same structure, the Court will reserve the issue of whether those claims should be considered separately.

**B. TILA (Count III)**

Plaintiffs allege that SpecialtyCare extends "consumer credit" under the Repayment Agreement. (Doc. No. 40 ¶¶ 159, 160, 168). SpecialtyCare seeks dismissal of the TILA claim based on the one-year statute of limitations. "[A] motion to dismiss under Rule 12(b)(6) is generally not the appropriate vehicle to dismiss a claim based on an affirmative defense" because "as with all affirmative defenses, it is the burden of the defendant to prove the elements of the defense." *Mixon v. Trott L., P.C.*, No. 19-1366, 2019 WL 4943761, at *2 (6th Cir. 2019). A plaintiff typically does not have to anticipate or negate an affirmative defense to survive a motion to dismiss. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). However, an affirmative defense can be the basis for dismissal under Rule 12(b)(6) if "the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief." *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013) (citation omitted). Accordingly, the Court must review the allegations in the complaint to determine if the statute of limitations affirmative defense clearly applies.

SpecialtyCare correctly points to the one-year statute of limitations that applies under TILA to consumer credit arrangements, which begins to run upon the allege failure to provide disclosures. Plaintiffs allege they were required to sign the Repayment Agreement when hired by

8

SpecialtyCare – September of 2020 for Fuchs and July of 2022 for Dorta – which for both named Plaintiffs was more than a year before they filed this action on August 23, 2023.

Plaintiffs argue that the statute of limitations under TILA for "private education loans" applies, which does not begin until the first payment is due. However, SpecialtyCare correctly points out in its reply that Plaintiffs' First Amended Complaint presents the TILA claim as one involving "consumer credit," not a "private educational loan" and that TILA applies specific definitions to such a loan, none of which Plaintiffs allege in the first Amended Complaint are satisfied by the Repayment Agreement or by the nature of the employment.

Accordingly, the Court finds that SpecialtyCare has shown that, based on the allegations in the First Amended Complaint, Plaintiffs TILA claims are clearly time-barred and should be dismissed.

## C. Restraint of Trade (Count IV)

Plaintiffs seek a declaration and injunction based on the Repayment Agreement's purported restraint of trade against the surgical neurophysiologists.

### 1. Plaintiff Fuchs

Under Article III of the Constitution, federal courts are limited to adjudicating actual "cases" or "controversies." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013). A case is considered moot and therefore no longer a live "case" or "controversy" "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* at 91 (internal citation omitted). "The party asserting mootness bears a 'heavy burden of persua[ding] the court that the challenged conduct cannot reasonably be expected to stand up again." *U.S. v. Dairy Farmers of Am., Inc.*, 426 F.3d 850, 857 (6th Cir. 2005). "The Supreme Court has repeatedly explained that '[a] defendant's voluntary cessation of a challenged

9

Case 3:23-cv-00892   Document 68   Filed 05/06/24   Page 9 of 12 PageID #: 712

practice does not deprive a federal court of its power to determine the legality of the practice,' unless 'subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (internal citation omitted).

Here, SpecialtyCare contends that there is no longer a live controversy between SpecialtyCare and Fuchs related to whether the Repayment Agreement is an unlawful restraint of trade or the parties lack a legally cognizable interest in the outcome because it released any claims against Fuchs related to enforcement of the Repayment Agreement. (Doc. No. 45 at PageID # 269).

In response, Plaintiffs argue that Fuch's claims are not moot because if Fuchs prevails in this lawsuit, "he is entitled to damages – i.e., repayment of the money he paid to SpecialtyCare to settle his debt, plus any corresponding penalties." (Doc. No. 48 at PageID # 319).

The Court finds that, according to the allegations in the First Amended Complaint, SpecialtyCare executed a general release with Fuchs after he repaid $15,000 and thus, SpecialtyCare cannot seek enforcement of the Repayment Agreement against Fuchs. However, Plaintiffs are correct that, given the lack of a reciprocal release for Fuchs, his claims are not moot because he may obtain a declaratory judgment and injunction.[2]

2. Plaintiff Dorta

SpecialtyCare argues that because the Repayment Agreement is not a covenant not to compete under which a former employee is limited as to where and for whom he or she may work, it is not actionable under Tennessee law as a restraint of trade. In response, Plaintiffs argue that

---

[2] SpecialtyCare appears to argue the affirmative defense of "release" as opposed to mootness. As explained above, "a motion to dismiss under Rule 12(b)(6) is generally not the appropriate vehicle to dismiss a claim based on an affirmative defense" because "as with all affirmative defenses, it is the burden of the defendant to prove the elements of the defense." *Mixon*, 2019 WL 4943761, at *2; *see also Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 435 (2017) ("In civil litigation, a release is an affirmative defense to a plaintiff's claim for relief, not something the plaintiff must anticipate and negate in her pleading."). Accordingly, the Court finds that dismissal based on the defense of "release" is not appropriate.

10

the effect of the Repayment Agreement is to restrain trade because of the monetary penalties due if an employee leaves before the end of the Repayment Agreement term. Neither party provides the Court with the elements of a claim of "unlawful restraint of trade" under Tennessee law.

Tennessee courts have allowed such claims even in the absence of a noncompetition agreement; while most "restraint of trade" cases addressed express restrictive covenants, those cases look to general policy considerations arising from concerns over unfair restraints of trade even without express restrictive covenants. However, such inquiries look to the reasonableness under particular circumstances. *Money and Tax Help, Inc. v. Moody*, 180 S.W.3d 561 (Tenn. Ct. App. 2005). Based on the allegations in the First Amended Complaint, Plaintiffs have stated a claim upon which relief can be granted for unlawful restraint of trade.

**D. Unlawful Liquidated Damages (Count V)**

Plaintiffs seek a declaration that the liquidated damages clause in the Repayment Agreement is unenforceable. The Declaratory Judgment Act does not independently confer jurisdiction. *Heydon v. MediaOne of Southeast Michigan*, 327 F.3d 466, 470 (6th Cir. 2003) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950)). Rather, it "is 'an enabling Act, which confers discretion on the court rather than absolute right upon the litigant.'" *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 758 (6th Cir. 2014) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 241 (1952)). Courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995). The Sixth Circuit has explained that this discretion "must not be unguided" and has articulated five factors to guide a court's inquiry of whether to exercise jurisdiction over a declaratory judgment action. *Western World*, 773 F.3d at 759.

The factors that the Court considers, often referred to as the *Grand Trunk* factors, are: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;" (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternate remedy which is better or more effective. *Western World*, 773 F.3d at 759 (internal citations omitted). These factors are not always equal and "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on the facts of the case." *Id*. Ultimately, in making its decision, the Court is must "take[] a good look at the issue and engage[] in a reasoned analysis of whether issuing a declaration would be useful and fair." *Id*.

Because certain claims relating to the Repayment Agreement will proceed, the Court denies SpecialtyCare's motion as to Count 5 and will consider arguments at a later juncture when the parties and the Court have the benefit of discovery and a more fully developed record.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. No. 44) will be **GRANTED** in part and **DENIED** in part.

An appropriate Order will enter.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE