IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MIGUEL DORTA, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | NO. 3:23-cv-00892 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| SPECIALTYCARE, INC., ) | MAGISTRATE JUDGE HOLMES |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is Plaintiffs' Motion for Issuance of Court-Approved Notice (Doc. No. 56). Defendant SpecialtyCare, Inc. ("SpecialtyCare") filed a response in opposition (Doc. No. 58), and Plaintiffs filed a reply (Doc. No. 63). For the reasons discussed below, the motion will be **GRANTED**.

### I. FACTUAL BACKGROUND

Named Plaintiffs Nathan Fuchs and Miguel Dorta are former SpecialtyCare employees who bring this collective action against SpecialtyCare on behalf of themselves and other entry-level surgical neurophysiologists ("SNs") employed by SpecialtyCare. Plaintiffs allege that SpecialtyCare requires all SNs to participate in a standardized year-long training program and, in exchange for training, all SNs are required to sign a uniform Training Repayment Agreement ("the Repayment Agreement") promising to reimburse SpecialtyCare for the cost of their training if they leave their jobs within three years. (Doc. No. 57 at PageID # 371-372). Plaintiffs state that although the training is completed within one year, the Repayment Agreement debt continues to grow for two more years. (Doc. No. 57 at PageID # 373). Plaintiffs state that "SNs' roles and job descriptions are similar across SpecialtyCare's regions and SpecialtyCare relies on uniform medical competencies to assess each" SN. (Doc. No. 57 at PageID # 374). Further, Plaintiffs allege

that SNs are subject to SpecialtyCare's uniform repayment and collection policies. (*Id.* at PageID # 379).

Plaintiffs have moved the Court to issue court-supervised notice to the following individuals:

> All SpecialtyCare employees (1) who SpecialtyCare employs or employed as an entry-level Surgical Neurophysiologist; **and** (2) who signed SpecialtyCare's Associate Repayment Agreement ("Agreement") containing the "surgical Neurophysiology Training Schedule"; **and** (3) who, at any point from three years prior to their opting into this lawsuit to the present, (a) paid SpecialtyCare money under the Agreement; **or** (b) owed SpecialtyCare money under the Agreement; **or** (c) had not yet completed three years of work for SpecialtyCare.

(Doc. No. 57 at PageID # 383). Plaintiffs also request authorization of a 60-day notice period with distribution of notice by mail and e-mail followed by reminder notices after 45 days.[1] (Doc. No. 57 at PageID # 384). Finally, Plaintiffs contend that SpecialtyCare should be ordered to produce a list with the following information for each potential collective member: first, middle, and last name; last known home address; last known email address(es); dates of hire and termination (if applicable); and job title(s). (*Id.* at PageID # 385). SpecialtyCare opposes Plaintiffs' motion. (Doc. No. 58).

## II. STANDARD OF REVIEW

A collective action hinges on "employees receiving accurate and timely notice concerning [its] pendency ... so that they can make informed decisions about whether to participate." *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). "[F]or a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those

---

[1] Plaintiffs initially requested that the Court authorize notice distributed to current SpecialtyCare employees by attaching the notice to the employees' next scheduled paycheck. SpecialtyCare contends that none of the potential opt-in plaintiffs currently receive live paychecks and that its system is not currently configured to enable it to attach documents to the online paystubs. In response, Plaintiffs agree to withdraw their request for the same and, accordingly, the Court finds that it does not need to address this issue.

employees are similarly situated to the plaintiffs themselves." *Clark v. A&L Homecare and Training Ctr., LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023). "That standard requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id.* After notice has issued, employees have opted into the collective action, and discovery has continued, the district court determines—not conditionally, but conclusively—whether the collective members are in fact "similarly situated" to the original plaintiffs. *Id.* at 1010-11.

### III. ANALYSIS

**A. Similarly Situated Plaintiffs**

Plaintiffs contend that all members of the proposed collective action are similarly situated. In support of their argument, Plaintiffs argue that all SNs are subject to the uniform Repayment Agreement. Plaintiffs rely on testimony from current and former SpecialtyCare employees that the amount and schedule of repayments under the Repayment Agreement are the same during the relevant time period. Plaintiffs also contend that each SN is required to sign the Repayment Agreement as a condition of hire and point to evidence that the increased amounts under the Repayment Agreement are the same for each SN. (Doc. No. 57 at PageID # 379). Plaintiffs point to evidence that SpecialtyCare employs uniform policies and standardized procedures to collect repayment amounts under the Repayment Agreement. Additionally, Plaintiffs point to evidence that the training program, including methods of assessment and classroom trainings, is uniform and standardized for the proposed collective members.

In response, SpecialtyCare "does not dispute that all [SNs] signed a Repayment agreement containing a Surgical Neurophysiology Training Schedule at the outset of their employment and that the material terms of their Repayment Agreements are the same." (Doc. No. 58 at PageID # 608). Instead, SpecialtyCare argues that Plaintiffs' kickback and "free and clear" FLSA claims are

3

not independent causes of action but rather must arise in conjunction with a minimum wage or overtime violation. (*Id.* at PageID # 608-609). SpecialtyCare contends that the Court needs to individually analyze the circumstances of each proposed member to determine whether liability occurred.

SpecialtyCare also points to exceptions from the repayment obligation, including that SNs are not obligated to reimburse SpecialtyCare if the employee resigns within 30 days of hire, is terminated without cause, has their employment status changed by SpecialtyCare due to a workforce reduction, SpecialtyCare eliminates the position, or the SN's employment ends because of death or permanent disability. SpecialtyCare contends that Plaintiffs' proposed collective includes SNs who are currently working for SpecialtyCare and do not currently owe SpecialtyCare money under the Repayment Agreement, as well as SNs whose reimbursement obligations were waived by SpecialtyCare and do not have a viable FLSA claim.

The Sixth Circuit considers the following factors to determine whether collection action members are similarly situated: "(1) the 'factual and employment settings of the individual[] plaintiffs'; (2) 'the different defenses to which the plaintiffs may be subject on an individual basis'; and (3) 'the degree of fairness and procedural impact of certifying the action as a collective action.'" *Isaacs v. Landmark Recovery of Louisville, LLC*, No. 3:23-CV-00210, 2023 WL 6096730, at *10 (M.D. Tenn. Sept. 18, 2023) (citing *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017)). "Whether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were." *Clark*, 68 F.4th at 1010. Further, "Plaintiffs are similarly situated if they can demonstrate that they suffered from 'a single, FLSA-violating policy' instituted by the employer defendant, or if their 'claims [are] unified by common theories of defendants' statutory violations, even if the proofs of

4

these theories are inevitably individualized and distinct.'" *Id.* (internal citations omitted). While SpecialtyCare argues that an individualized inquiry into each proposed member is necessary, Plaintiffs clearly articulate that the dispute at issue is "whether SpecialtyCare's uniform policy violates the law." (Doc. No. 57 at PageID # 378). Plaintiffs point to ample evidence that all SNs were required to sign the Repayment Agreement as a condition of hire, the amount and schedule of repayments are the same amongst SNs during the relevant time period, SpecialtyCare implements uniform policies and standardized procedures to collect repayment amounts, and the training program is standardized amongst the proposed collective members. Accordingly, the Court finds that Plaintiffs have demonstrated a "strong likelihood" that the proposed members are similarly situated to the named Plaintiffs.

SpecialtyCare also contends that Plaintiffs' proposed collective includes members whose FLSA claims are time-barred. It appears that SpecialtyCare's argument is that the limitations period has expired for SNs who received their final paychecks more than three years ago. Plaintiffs do not dispute that SNs who received their last paycheck more than three years ago may be time-barred from bringing "free and clear" FLSA claims. However, Plaintiffs contend that these SNs can still maintain FLSA claims for unlawful kickbacks because the limitations period runs when the unlawful conduct – *i.e.*, the taking back of wages – occurs, rather than at the time the SNs receive their last paycheck. At the notice stage, the court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 747 (M.D. Tenn. 2018) (internal citation omitted). Accordingly, the Court will reserve ruling on this issue until after discovery progresses.

**B. Plaintiffs' Proposed Notice**

Plaintiffs contend that their proposed notice is timely, accurate, and consistent with similar notices provided by courts in the Sixth Circuit.

5

SpecialtyCare argues the definition should be limited to SNs who received a paycheck within the three years preceding the date the first notice is sent and individuals who have made a partial reimbursement under the Repayment Agreement. SpecialtyCare contends the definition should exclude current associates, associates who resigned within 30 days or worked for SpecialtyCare for more than 3 years, associates who satisfied an exception to the reimbursement obligation, and associates who had their reimbursement obligation waived by SpecialtyCare.

As noted above, "the Court's role at this stage, is not to 'consider the merits of the claims, resolve factual disputes, or decide substantive issues.'" *Polen v. JSW Steel USA Ohio, Inc.*, No. 2:22-CV-00085, 2023 WL 6860399, at *6 (S.D. Ohio Oct. 18, 2023) (internal citation omitted). Accordingly, the Court finds that Plaintiffs' proposed definition is appropriate at this stage.

SpecialtyCare also challenges Plaintiffs' proposed email notice and email and mail reminder notices, stating that it would result in "[b]ombarding potential opt-in plaintiffs" or "could be misinterpreted as judicial encouragement to join the lawsuit." (Doc. No. 58 at PageID # 616). SpecialtyCare argues that it should not be required to produce SpecialtyCare email addresses for current associates because it "carries the risk of causing disruption in the workplace and confusion about what the notice is and whether it is work-related or endorsed by SpecialtyCare." (Doc. No. 58 at PageID # 616). The Court disagrees. Courts within the Sixth Circuit have routinely approved notice through regular mail and email, as well as reminder notices. *Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 751 (M.D. Tenn. 2018); *Wells v. Community Health Sys., Inc.*, 630 F. Supp. 3d 938, 947 (M.D. Tenn. 2022). Plaintiffs' proposed notice also clearly states that SpecialtyCare denies any liability and contends that it complied with all applicable laws. Accordingly, the Court finds that SpecialtyCare providing potential collective members' work email addresses is unlikely to result in confusion.

The Court finds that Plaintiffs' proposed notice and consent form (Doc. No. 57-2) appears to be "timely, accurate, and informative," as required. *Hoffmann–La Roche Inc.*, 493 U.S. 165 at 172. Plaintiffs' proposed notice clearly informs collective members of their rights and how they can elect to participate in the action. The notice provides notice of the pendency of the action and accurately describes Plaintiffs' legal claims. The notice also accurately states that retaliation for participation in an FLSA action is prohibited by law. *See* 29 U.S.C. § 215(a)(3) (anti-retaliation provision).

Accordingly, the Court approves Plaintiffs' proposed notice and consent form as to notice via mail, e-mail, and follow-up notices. Further, within 14 days of the Court's order, SpecialtyCare must provide to Plaintiffs' counsel an Excel spreadsheet containing the following information for each potential collective member: the first, middle, and last name; last known home address; last known email address(es); dates of hire and termination (if applicable); and job title(s).

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' Motion For Issuance of Court-Approved Notice (Doc. No. 56) will be **GRANTED**.

An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE