IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **NATHAN FUCHS *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:23-cv-00892** |
| | ) | **CHIEF JUDGE CAMPBELL** |
| **SPECIALTYCARE, INC.,** | ) | **MAGISTRATE JUDGE HOLMES** |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Pending before the Court is Plaintiffs Nathan Fuchs' ("Fuchs") and Caitlin Bailey's ("Bailey," collectively "Plaintiffs") Motion for Rule 23 Class Certification ("Motion") (Doc. No. 128) to which Defendant SpecialtyCare, Inc. ("SpecialtyCare") has filed an Opposition (Doc. No. 144), and Plaintiffs have filed a Reply (Doc. No. 147). For the reasons set forth below, the Motion will be **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

The allegations underlying this case are set forth in detail in the Court's Memorandum on SpecialtyCare's Partial Motion to Dismiss. (*See* Doc. No. 189 at 1–3). Through the pending Motion, Plaintiffs seek to certify two classes of surgical neurophysiologists ("SNs"), formerly employed by SpecialtyCare, in connection with claims arising from an agreement ("Repayment Agreement"), which provides that SNs must pay SpecialtyCare $15,000 to $30,000 if they resign

from their jobs within three years. (*See* Doc. No. 129 at 1).[1] Plaintiffs also move the Court to appoint them as class representatives, appoint their attorneys as class counsel, and approve and authorize the distribution of class notice. (*See* Doc. Nos. 128 at 1, 129 at 17–19).

## II. STANDARDS GOVERNING CLASS CERTIFICATION

To certify a class, the Court must be satisfied that the requirements of Federal Rule of Civil Procedure 23(a) and at least one of Rule 23(b)'s provisions are met. *See Comcast v. Behrend*, 569 U.S. 27, 33–34 (2013). Plaintiffs here seek certification under Rules 23(b)(2) and 23(b)(3). The decision whether to certify a class is committed to the sound discretion of the district judge and turns on the particular facts and circumstances of each individual case. *See In re Whirlpool Corp. FrontLoading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013).

Rule 23(a) establishes four requirements for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(2) allows certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

Rule 23(b)(3) allows certification if:

the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

---

[1]    In light of the Court's Order (Doc. No. 190) on SpecialtyCare's Partial Motion to Dismiss, the remaining claims are a violation of the Truth in Lending Act ("TILA") (Count III), unlawful restraint of trade (Count IV), and unlawful liquidated damages provision (Count V). The Court will not discuss the now-dismissed FLSA claims (Counts I and II).

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Plaintiffs bear the burden of showing that the requirements for class certification are met. *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016).

## III. ANALYSIS

To certify a class, the Court must be satisfied that the requirements of Federal Rule of Civil Procedure 23(a)–numerosity, commonality, typicality, and adequate representation–and at least one of Rule 23(b)'s provisions are met. *See Comcast*, 569 U.S. at 33–34. In this case, Plaintiffs seek certification of a declaratory relief class under Rule 23(b)(2) and a liability and damages class under Rule 23(b)(3). (*See generally* Doc. No. 129). The proposed definitions of both classes are identical: "all surgical neurophysiologists employed by SpecialtyCare and subject to its training repayment agreement at any point from August 23, 2017[,] to the present." (Doc. No. 129 at 2). The Court will analyze the requirements of Rule 23(a) for both proposed classes together and the requirements of Rule 23(b) separately.

### A. Rule 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. "Generally, the number of members of the proposed class, if more than several hundred, easily satisfies the requirements of Rule 23(a)(1)." *Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc.*, 333 F.R.D. 390, 403 (M.D. Tenn. 2019) (citing *Bacon v.*

3

*Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004); *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 n.1 (6th Cir. 1997) (joinder of parties impracticable for class with over 1100 members and "[t]o reach this conclusion is to state the obvious")). However, "as few as forty class members may satisfy the numerosity requirement." *A.M.C. v. Smith*, 620 F. Supp. 3d 713, 732 (M.D. Tenn. 2022) (quoting *Snead v. CoreCivic of Tenn., LLC*, No. 3:17-CV-0949, 2018 WL 3157283, at *11 (M.D. Tenn. June 27, 2018)). Here, "more than 300 SNs have been subject to SpecialtyCare's [Repayment Agreement] during the [proposed class] period." (Doc. No. 129 at 1). In addition, SpecialtyCare does not contest numerosity. (*See generally* Doc. No. 144). Therefore, the Court finds that the proposed classes satisfy this requirement.

    2. <u>Commonality</u>

   Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The standard is not demanding." *Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578, 583 (W.D. Mich. 2001). "Rule 23(a) simply requires a common question of law or fact." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997). Plaintiffs must show that the class members' claims depend upon a common contention of such a nature that it is capable of class-wide resolution. *In re Whirlpool Corp.*, 722 F.3d at 852. "Variation in the ancillary details of the class members' cases is insufficient to defeat certification, as long as '[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue.'" *Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481, 501 (M.D. Tenn. 2019) (quoting *Bacon*, 370 F.3d at 570).

   The proposed classes also pass muster under this factor. Although Plaintiffs raise multiple legal theories, all of their claims revolve around the Repayment Agreement. For instance, whether the Repayment Agreement is unreasonable is a common question for the proposed class. (*See* Doc.

4

No. 129 at 12–14). Another common question is whether the Repayment Agreement is a "private education loan" subject to TILA. Finally, the Plaintiffs' declaratory judgment claim also presents common questions such as whether the liquidated-damages provision in the Repayment Agreement rises to the level of being an unlawful penalty. In their Motion, Plaintiffs explain why each of these questions is suitable for common proof (*see* Doc. No. 129 at 12–16), which goes to the heart of commonality. *See Speerly v. Gen. Motors, LLC*, 143 F.4th 306, 319 (6th Cir. 2025) ("the plaintiffs need to identify only one question [central to the claim at hand] suitable for common proof with respect to each cause of action" (citing *Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 359 (2006)). The Court agrees with Plaintiffs, insofar as all the putative class members were subject to nearly identical terms and training. Further, SpecialtyCare does not contest commonality. (*See generally* Doc. No. 144). The Court therefore finds that this requirement is also satisfied.

### 3. Typicality

"Rule 23(a)(3) requires proof that plaintiffs' claims are typical of the class members' claims." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012). "Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *In re Whirlpool Corp.*, 722 F.3d 838 at 852 (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)). "This requirement insures that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *Id.* at 852–53. A plaintiff's claims generally will be "typical" of the class's when all of them arise from the same "course of conduct" and assert the "same legal theory." *Doster v. Kendall*, 54 F.4th 398, 438 (6th Cir. 2022) (citations omitted); *see also Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) ("for the district

5

court to conclude that the typicality requirement is satisfied, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." (citation and internal quotations omitted)).

Plaintiffs argue that their claims are typical of the claims of all proposed class members. As to the claims for unlawful restraint of trade and declaratory judgment, Plaintiffs argue that their claims are typical of those of the proposed classes because they "stem[] from SpecialtyCare's use of the [Repayment Agreement], which it applied uniformly to the proposed classes." SpecialtyCare does not counter this argument. The Court agrees with Plaintiffs that these claims are typical because they arise from common factual elements, *i.e.*, the terms of the Repayment Agreement and related practices by SpecialtyCare, and rely on the same legal theories.

As for the TILA claim, for which Bailey is the only named plaintiff, Plaintiffs argue that her claim is typical because the Repayment Agreement, which according to Plaintiffs' theory lacked certain disclosures required for private education loans, did "not wart from one SN to another." (*See* Doc. No. 129 at 17). SpecialtyCare, counters that Bailey's claim is not typical because she testified during her deposition that she would not have found forms containing such disclosures useful because she did not consider SpecialtyCare to be "a college or a university" when she was applying, which SpecialtyCares interprets as an admission that "she did not detrimentally rely on SpecialtyCare's purported failure" to make the disclosures. (*See* Doc. No. 144 at 15 (redacted portion)).[2] In their Reply, Plaintiffs counter that detrimental reliance is not required for statutory damages under TILA and that the usefulness of specific forms with which she was not familiar at the time of her deposition is irrelevant because she testified that she would not have accepted SpecialtyCare's offer had she received the required disclosures. (*See* Doc. No.

---

[2]     TILA's definition of "covered educational institution" is broader than simply "a college or university." (*See* Doc. No. 189 at 14–17).

147 at 2).[3] The Court agrees that detrimental reliance is not required for statutory damages and attorneys' fees under TILA. *See Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 800 (6th Cir. 1996). The Court need not discuss the remaining arguments because it will not certify the (b)(3) class with respect to the actual-damages portion of the TILA claim. (*See infra*, Section C.1.c).

The typicality requirement is met.

### 4. Adequacy

The adequacy requirement of Rule 23(a)(4) requires that the "representative parties . . . fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "There are two criteria for determining whether the representation of the class will be adequate: 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976) (citing *Gonzales v. Cassidy*, 474 F.2d 67, 73 (5th Cir. 1973)).

As for Bailey, SpecialtyCare makes arguments that mirror its typicality arguments (*see* Doc. No. 144 at 14–15), which the Court rejects for the same reasons as above.

As for Fuchs, there is no dispute that he is an adequate representative as to the (b)(3) class.[4] However, as discussed below (*see infra*, Section B), the Court construes SpecialtyCare's standing argument (*see* Doc. No. 144 at 15–16) as challenging Fuchs' ability to serve as an adequate class representative. *See Passa v. City of Columbus*, 266 F.R.D. 197, 206 (S.D. Ohio 2010)

---

[3]     SpecialtyCare objects to Plaintiffs' use of a portion of Bailey's deposition transcript in their Reply, characterizing any reference thereto as a new argument based on new evidence. (*See* Doc. No. 144 at 23). The objection is overruled because Plaintiffs merely respond to SpecialtyCare's argument based on a different portion of that same transcript.

[4]     Fuchs did not release claims against SpecialtyCare, whereas SpecialtyCare released claims against him. (*See* Doc. No. 129 at 11 (citations to the record); Doc. No. 187-1 (release))

("[Defendant's] arguments as to plaintiff's standing are construed as challenging plaintiff's ability to serve as an adequate class representative"). Because the Court finds that Fuchs does not have standing to bring a declaratory judgment claim or seek injunctive relief, Fuchs is not an adequate (b)(2) class representative.

Overall—leaving aside Fuchs' standing as to the declaratory judgment and injunctive relief claims—Plaintiffs "possess the same interest and suffer[ed] the same injury as the class members." *Beattie*, 511 F.3d at 562 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594–95 (1997)). Plaintiffs also appear to be diligently prosecuting this case. For these reasons, the Court finds that Plaintiffs are adequate representatives for the (b)(3) class and that Bailey is an adequate representative for the (b)(2) class. Likewise, based on the firm resume and declarations attached to the Motion (*see generally* Doc. No. 129-1; 129-44; 129-46–47) and the lack of argument to the contrary by SpeicaltyCare, The Court finds that class counsel are well-equipped to represent the class. Accordingly, the adequacy requirement is met.

Having concluded that the requirements of Rule 23(a) have been satisfied, the Court turns to the requirements of Rules 23(b)(2) and (b)(3).

### B. Rule 23(b)(2)

To certify a class for injunctive and declaratory relief under Rule 23(b)(2), Plaintiffs must show "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23. "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

8

Plaintiffs argue that a declaration that the Repayment Agreement is an unenforceable penalty would benefit the entire class. (*See* Doc. No. 129 at 20). SpecialtyCare first counters that the putative class members' claims are "not cohesive" because "SNs signed various repayment agreements and experienced different costs associated with their training." (Doc. No. 144 at 15–16). However, SpecialtyCare does not provide the court with sufficient elements to support that any differences in terms would render the class incohesive. SpecialtyCare only points to one different agreement (Doc. No. 143-9) with minimal differences, which are immaterial to the relief Plaintiffs seek in Counts IV and V. (*Compare* Doc. No. 143-12 at 5, *with* Doc. No. 143-9 at 27–28).

Next, SpecialtyCare counters that the requirements of Rule 23(b)(2) are not met because "Nathan Fuchs and several putative class members do not have a reimbursement obligation under the Repayment Agreement and thus lack standing and would not benefit from the proposed relief." (Doc. No. 144 at 15–16). Specifically, SpecialtyCare points to: SNs who are still employed by SpecialtyCare;[5] SNs who fall within exemptions of the Repayment Agreement, SNs for whom SpecialtyCare has waived the reimbursement obligation, including pursuant to a settlement agreement; and SNs who have already paid in full. (*See id.* at 12). Plaintiffs reply with citations to persuasive authority stating that courts may certify a (b)(2) class even if some members of the class were not harmed. (*See* Doc. No. 147 at 2–3 (citing *Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 387, 396 n.3 (S.D. Ohio 2008) *and Neese v. Becerra*, 342 F.R.D. 399, 412 (N.D. Tex. 2022))). In one such case, the court opined:

> The absence of injury as to some members of a(b)(2) class is not . . . problematic because the relief available there is declaratory and injunctive in nature. Class members who were not harmed would not accrue any benefits as a result of the issuance of a declaratory

---

[5]    The Court disagrees that SNs who are still employed by SpecialtyCare would not benefit from the requested relief, inasmuch as it would effectively render the Repayment Agreement unenforceable and allow them to leave prior to the three-year mark without penalties.

9

judgment or injunction, nor presumably would they care that they had been included in such a class.

*Stewart*, 252 F.R.D. at 396 n.3. The Court finds this reasoning persuasive and further notes that "[a] Rule 23(b)(2) class need not be defined as precisely as a Rule 23(b)(3) class [as Rule 23(b)(2) does not provide for monetary or individualized relief, and does not require notice to allow class members to opt out]." *Duffey v. Pope*, No. 2:11-CV-16, 2012 WL 4442762, at *5 (S.D. Ohio Sept. 25, 2012) (quoting *Finch v. New York State Off. of Child. & Fam. Servs.*, 252 F.R.D. 192, 198 (S.D.N.Y. 2008)); *see Cole v. City of Memphis, Tenn.*, No. 2:13-CV-02117-JPM, 2014 WL 8508560, at *15 (W.D. Tenn. Sept. 29, 2014), *modified*, No. 2:13-CV-02117-JPM, 2015 WL 3442277 (W.D. Tenn. May 28, 2015); *see also Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974) (a (b)(2) class may be broader than a (b)(1) or (b)(3) class)).

In any event, the Court could easily exclude the categories of SNs that would not benefit from declaratory relief from the class definition. *See Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("district courts have broad discretion to modify class definition" (collecting cases)). When a class is not so overly broad as to require denial of certification, courts often prefer to refine the class definition rather than deny certification. *See, e.g., Cunningham v. Vanderbilt Univ.*, No. 3:19-CV-00788, 2020 WL 13443878, at *4 (M.D. Tenn. Jan. 10, 2020); *Sauter v. CVS Pharmacy, Inc., No. 2:13-CV-846, 2014 WL 1814076, at *9 (S.D. Ohio May 7, 2014)*; *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). The Court will do so in later stages of this litigation if need be.

A separate issue is that "[a] potential class representative must demonstrate individual standing vis-as-vis [*sic*] the defendant; he cannot acquire such standing merely by virtue of bringing a class action." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998). SpecialtyCare correctly argues that Fuchs is not subject to the Release Agreement anymore (*see*

10

*generally* Doc. No. 187-1) and therefore lacks standing to bring a declaratory judgment claim. But, as noted above (*see supra*, Section A.4), this is an adequacy issue, not a Rule 12(b)(2) issue. Indeed, there is no dispute that Bailey is still subject to the Repayment Agreement and therefore has standing to bring the declaratory judgment claim. As such, the Court will not deny class certification on this basis. *Cf. Rouse v. Caruso*, No. 2:06-CV-10961, 2013 WL 588916, at *6 (E.D. Mich. Jan. 7, 2013), *report and recommendation adopted*, No. 06-CV-10961, 2013 WL 569638 (E.D. Mich. Feb. 13, 2013) (denying class certification on (b)(2) grounds where "none of the named plaintiffs remaining in the case could benefit from injunctive relief").

For class certification on the ground that the defendant has acted or refused to act on grounds that apply generally to the class, it is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. See *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 428 (6th Cir. 2012). Such is the case here. Therefore, the Court finds that the requirements of Rule 23(b)(2) are met.

### C. Rule 23(b)(3)

"Rule 23(b)(3) classes . . . must meet predominance and superiority requirements, that is, 'questions of law or fact common to class members [must] predominate over any questions affecting only individual members' and class treatment must be 'superior to other available methods.'" *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017) (quoting Fed. R. Civ. P. 23(b)(3)). "In addition, Rule 23(b)(3) classes must also meet an implied ascertainability requirement." *Id.* (citing *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016)).

1. <u>Predominance</u>

"To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 459–60 (6th Cir. 2020); *see Young*, 693 F.3d at 544 ("While the commonality element of Rule 23(a)(2) requires showing one question of law or fact common to the class, a Rule 23(b) (3) class must show that common questions will *predominate* over individual ones.") (emphasis in original). "The Supreme Court has emphasized that 'Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.'" *Bridging Communities*, 843 F.3d at 1124 (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013)) (emphasis in original). "Common questions are those 'that can be proved through evidence common to the class.'" *Id.* (quoting *In re Whirlpool Corp.*, 722 F.3d at 858).

In Section II.A.2, *supra*, the Court found that common questions of law exist for the unlawful restraint of trade and TILA claims. The Court must now determine whether those questions will predominate over individual ones such that class certification on each claim is appropriate. "The predominance inquiry begins with the elements of the underlying cause of action." *Momenta Pharms., Inc.*, 333 F.R.D. at 406 (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). However, the predominance inquiry is not focused on whether proof will establish the elements of the claim, but rather whether common questions will predominate over individual ones for each claim. *See In re Whirlpool Corp.*, 722 F.3d at 858. In other words, Plaintiffs seeking class certification based on predominance do not need to prove that each element of a claim can be established by class-wide proof, rather they need to prove that

12

common questions predominate over questions affecting only individual class members. *See Weiner v. Tivity Health Inc.*, 334 F.R.D. 123, 131 (M.D. Tenn. 2020) (citing *Bridging Communities*, 843 F.3d at 1124). The predominance inquiry is tied to the proof, not to the answer, and the fact that there may be some individual questions does not, in and of itself, mean this inquiry cannot be satisfied.

a. <u>Class Definition</u>

As a threshold issue, the Court addresses the proposed class definition. Indeed, many of SpecialtyCare's arguments regarding predominance boil down to overbreadth. Specifically, SpecialtyCare points out that:

> some putative class members, such as those who resigned their employment within 30 days, satisfied the three-year term of employment, qualified for an exception, or otherwise had their reimbursement obligation waived by SpecialtyCare, have no reimbursement obligation and therefore suffered no economic harm associated with signing the Repayment Agreement. Likewise, some SNs are still currently working for SpecialtyCare and may never have a reimbursement obligation if they remain employed for three years.

(Doc. No. 144 at 16–17). SpecialtyCare also notes that TILA's statute of limitations renders the proposed class definition overly broad because it "include[s] several SNs whose claims would be time barred by the statute of limitations." (*Id.* at 19). Finally, SpecialtyCare contends that "the putative class includes SNs who have released their claims against SpecialtyCare," and that three identified individuals signed general releases applying to "any and all claims, known or unknown, each may have against SpecialtyCare." (*Id.* at 19 (citing Doc. No. 143-9 (releases)). Implicitly conceding that the class is overbroad, Plaintiffs make the following suggestion in their Reply:

> To address the one-year statute of limitations, the Court may divide the Class into a Restraint of Trade Class or Subclass and TILA Class or Subclass. And the Court may modify the proposed class definition to exclude anyone who released claims.

(Doc. No. 147 at 5).

The Court agrees that the proposed (b)(3) class contains SNs whose claims are time-barred and others who have no reimbursement obligation. However, these questions go to the merits of individual class members' claims, which the Court may only consider to the extent necessary to decide if the pre-requisites of Rule 23 are satisfied. *See In re Whirlpool Corp.*, 722 F.3d at 851; *see Foster v. D.B.S. Collection Agency*, No. 01-CV-514, 2002 WL 484500, at *10 (S.D. Ohio Mar. 26, 2002) ("to deny certification on the grounds that the Defendants may raise a statute of limitations defense would be to reach the merits of that defense, which the Court may not do on a motion for class certification" unless he assertion of a statute of limitations defense destroys predominance); *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016) ("even a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct . . . . This merely highlights the possibility that an injurious course of conduct may sometimes fail to cause injury to certain class members [and is irrelevant to predominance if] it fails to reveal a flaw that may defeat predominance, such as the existence of large numbers of class members who were never exposed to the challenged conduct to begin with."). The Court will therefore not inquire into the merits of the class members' claims more than strictly necessary for purposes of ruling the Pending Motion.

At this time, the Court finds it sufficient to (1) exclude from the (b)(3) class definition putative class members who signed general releases and (2) split the class into two (b)(3) subclasses: one unlawful-restraint-of-trade subclass and one TILA subclass. The Court and parties can address SpecialtyCare's liability first and, if SpecialtyCare is found liable as to one or both claims, narrow the definition of one or both subclasses in due time to exclude non-meritorious claimants. For instance, the Court could refine the TILA subclass based on the statute of

14

limitations, *i.e.*, based on the date of the first finance charge.[6] Because the Court will only certify the TILA subclass as to statutory damages (*see infra*, Subsection c), it will not be necessary to exclude SNs who have no reimbursement obligation.

As to the unlawful-restraint-of-trade subclass, the Court will, at this time, exclude SNs who resigned within 30 days and those who qualified for a contractual exception to the repayment obligation. Any further refinement would be premature at this stage because unresolved issues could dispose of this subclass entirely. Indeed, it is unclear whether Plaintiffs requested damages in connection with their unlawful-restraint-of-trade claim and whether Tennessee law even allows such damages. (*See infra*, Subsection b). Answering either of these questions in the negative would obviate the need for this subclass. In addition, its membership will depend on the type of damages. For instance, damages for suppressed wages could apply to SNs who received a waiver by SpecialtyCare or worked for SpecialtyCare for three years, while damages stemming from Repayment Agreement payments would not apply to them. (*See* Doc. No. 129 at 1 (linking restraint of trade to wage suppression), 8–9 ("There are at least two categories of potential class-wide damages here: (1) wage suppression, and (2) [Repayment Agreement] payments." (citing Doc. No. 127-31)).

With the above refinements to the class, and as discussed below, the Court is confident that common questions will predominate. Once those common questions are resolved, the Court can

---

[6]     "As a general rule an action under TILA must be brought 'within one year from the date of the occurrence of the violation'" *United States v. Petroff-Kline*, 557 F.3d 285, 296 (6th Cir. 2009) (quoting 15 U.S.C. § 1640(e). "[T]he limitations period of 15 U.S.C. § 1640(e) is not measured from the date on which the disclosure was required by law to be made, but instead from the date on which a finance charge was first imposed[.]" *Raney v. First Nat. Bank of Nebraska, Inc.*, No. CIV.A. 06-8-DLB, 2006 WL 2588105, at *5 (E.D. Ky. Sept. 8, 2006) (citing *Goldman v. First Nat. Bank of Chicago*, 532 F.2d 10 (7th Cir. 1976)).

further narrow the (b)(3) class or subclasses and decertify them if need be. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (for predominance purposes, "the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members"); *see also Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 823 (7th Cir. 2012) ("some class members' claims will fail on the merits if and when damages are decided, a fact generally irrelevant to the district court's decision on class certification); *Hilao v. Estate of Marcos*, 103 F.3d 767, 786 (9th Cir. 1996) (class-action interest was "only in the total amount of damages for which it will be liable," not "the identities of those receiving damage awards"). Having resolved this threshold issue, the Court will address predominance for each claim in turn.

b. Unlawful Restraint of Trade

Under Tennessee law, whether agreements restricting competition are impermissible depends on whether they are reasonable under the circumstances. *See Allright Auto Parks, Inc. v. Berry*, 219 Tenn. 280, 285, 409 S.W.2d 361, 363 (1966).

> There is no inflexible formula for deciding the ubiquitous question of reasonableness, insofar as noncompetitive covenants are concerned. Each case must stand or fall on its own facts. However, there are certain elements which should always be considered in ascertaining the reasonableness of such agreements. Among these are: the consideration supporting the agreements; the threatened danger to the employer in the absence of such an agreement; the economic hardship imposed on the employee by such a covenant; and whether or not such a covenant should be inimical to public interest.

*Id.* "[A] threshold question is whether the employer has a legitimate business interest, *i.e.*, one that is properly protectable by a non-competition covenant." *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 644 (Tenn. Ct. App. 1999).

> Considerations in determining whether an employee would have such an unfair advantage include (1) whether the employer provided the employee with specialized training; (2) whether the employee is given access to trade or business secrets or other confidential information; and (3) whether the employer's customers tend to associate the employer's

16

business with the employee due to the employee's repeated contacts with the customers on behalf of the employer.

*Id.* (citing *Hasty v. Rent-A-Driver, Inc.*, 671 S.W.2d 471, 472 (Tenn. 1984)); *see HCTec Partners, LLC v. Crawford*, 676 S.W.3d 619, 634 (Tenn. Ct. App. 2022) (same).

Here, most *Allright* factors pertaining to the reasonableness of the Repayment Agreement are amenable to general and common proof. For instance, it flows from logic that the consideration supporting the Repayment Agreement, the threatened danger to SpecialtyCare, and whether the Repayment Agreement is against public interest are questions that can be disposed of on a common basis because each class member was subject to the same or substantially same agreement. (*See supra*, Section II.B). Plaintiffs have also shown that the same is true for sub-factors pertaining to SpecialtyCare's legitimate business interests given the uniformity of training, job duties, and structure of the Repayment Agreement. (*See* Doc. No. 129 at 13–14).

SpecialtyCare argues that individualized issues would predominate as to the second *Allright* factor, *i.e.*, economic hardship. (*See* Doc. No. 144 at 17). To that effect, SpecialtyCare first argues that each SN's personal circumstances will affect the Court's hardship analysis. (*See id.*). The Court doubts that inquiries based on personal circumstances will predominate over common issues, especially because the reasonableness analysis will likely boil down to whether SpecialtyCare's interest in enforcing the Repayment Agreement outweighs any impact on SNs' mobility and wages. The examples of personal circumstances that SpecialtyCare provides, *i.e.*, compensation, personal assets, financial support from family, payment plans, and payments from subsequent employers, are a better measure of *post facto* mitigation than any underlying impact on mobility or wages. In other words, that some SNs may have been able to absorb the repayment obligation does necessarily negate the existence of generalized financial harm to the class. In

17

addition, that some SNs might have experienced no hardship at all resembles a merits question, which the Court will not examine at the class certification stage.

Next, SpecialtyCare relies on *Fredericks v. Ameriflight, LLC*, No. 3:23-CV-1757-X, 2024 WL 4887528 (N.D. Tex. Nov. 25, 2024). There, pilots brought, in relevant part, an unlawful-restraint-of-trade claim against their employer pursuant to a requirement that "[a] pilot[] . . . reimburse [the employer] between $15,000 and $30,000 if the pilot resigned or was terminated for cause within a certain time range." *Id.* at *1. The court denied class certification based on lack of predominance, reasoning:

> The common question is whether the training repayment program limitations as to time, area, and scope are unreasonable, such that it artificially restrains the mobility of labor. [Plaintiff] argues there will be a common resolution because the training was standardized and [the employer] calculated the training cost across the class and not individually. The Court disagrees. The ultimate inquiry doesn't stop at whether there are reasonable restrictions. It also assesses whether the restrictions functionally limit mobility of labor. The 160 pilots in the putative class had different experiences coming into [the employer's flight school]. While at [the school], they trained on planes of varying sizes. Some, like [Plaintiff], found work elsewhere before they completed their time . . . to avoid repaying training. Some . . . remain employed . . . even after completing the duration of their agreements. And another 23 have not yet completed the duration of their Agreements but remain [employed].
>
> Determining the benefit of the training to these different groups is not a one-size-fits-all endeavor. The real inquiry is what value the training provided them and the consequential impact on their mobility. As [Plaintiff] herself admitted in her deposition, it would be "very difficult to quantify" the value each pilot received from the training and that talking to each pilot would be the way to ascertain that value. But the record [Plaintiff] brings at this stage did not talk to each pilot.

*Id.* at *3. The court concluded that the Plaintiff failed to prove predominance. *See id.* at *4.

The Court finds *Fredericks* analogous in some aspects and distinguishable in others,[7] but overall not persuasive under the present circumstances. Indeed, the court focused on the value of

---

[7]     For instance, it appears that at least two SNs had prior educational experience and that at least one SN, Plaintiff Nathan Fuchs, had relevant work experience that could have relativized the benefits of their training in terms of mobility. (*See* Doc. No. 144 at 5–6). Likewise, some SNs left SpecialtyCare at various

each pilot's training and its impact individual mobility. Here, Plaintiffs' theory is that the Repayment Agreement negatively impacted the mobility of all SNs, which, in the aggregate, led to wage suppression. (*See generally* Doc. No. 127-31). In this context, the core question is not the individual value of each SN's training but the Repayment Agreement's impact on mobility across the board and ultimately on wages. For this reason, individual inquiries related to the value of training will not predominate.

Finally, SpecialtyCare argues that common questions do not predominate because Tennessee law does not provide for monetary damages as a remedy for unlawful restraint of trade and that damages can therefore not be calculated on a class-wide basis. (*See* Doc. No. 144 at 20–22). However, no authority SpecialtyCare cites supports this proposition. In their Reply, Plaintiffs counter that wage suppression is simply a theory of actual damages, allowed by Tenn. Code Ann. § 47-25-106(a) ("[a]ny person who is directly or indirectly injured or damaged by any violation of this part may sue for and recover, in any court of competent jurisdiction, equitable relief and actual damages"). There are at least two glaring weaknesses in Plaintiffs' theory. First, it implies that the claim for unlawful restraint of trade is based on the Tennessee Trade Practices Act ("TTPA"),[8,9] which at first glance "applies only to tangible goods, not intangible services," including employment services. *Bennett*, 198 S.W.3d at 751, 752 n.2 (citing *McAdoo Contractors, Inc. v.*

---

stages of the training and took various career paths, while others still work there, and at least one left and returned after working for other employers. (*Id.* at 6–8). Further, the SNs' compensation was not uniform. (*Id.* at 9–10). On the other hand, contrarily to the pilots who trained on different categories of aircrafts, the SNs were enrolled in the same program, meaning the value of their training was less disparate.

[8]     "The title 'Tennessee Trade Practices Act' [does not appear in the statute and] appears to have originated in case law." *Bennett v. Visa U.S.A., Inc.*, No. CIV.A. 35126, 2004 WL 2115353, at *2 (Tenn. Ch. Aug. 27, 2004), *aff'd in part, rev'd in part sub nom. Bennett v. Visa U.S.A. Inc.*, 198 S.W.3d 747 (Tenn. Ct. App. 2006).

[9]     The Third Amended Complaint does not reference the TTPA, but it is unclear whether an unlawful-restraint-of-trade claim exists under Tennessee common law. *H Grp. Constr., LLC v. City of Lafollette*, No. E201800478COAR9CV, 2019 WL 354973, at *6 (Tenn. Ct. App. Jan. 28, 2019).

19

*Harris*, 222 Tenn. 623 (1969)); *see also Sherwood v. Microsoft Corp.*, No. M2000-01850-COA-R9CV, 2003 WL 21780975, at *26 (Tenn. Ct. App. July 31, 2003) (legislative attempt to expand the TTPA to services was unsuccessful). Second, under the TTPA, "[a] class action lawsuit must not be brought to obtain injunctive relief *and* recover damages[.]" Tenn. Code Ann. § 47-25-106(a) (emphasis added). In the same vein, SpecialtyCare argues that Plaintiffs may not seek monetary damages as well as a declaratory judgment or injunctive relief in the same action." (*See* Doc. No. 144 at 21–22). SpecialtyCare also questions whether Plaintiffs have pleaded a request for damages in connection with the unlawful-restraint-of-trade claim altogether. (*See* Doc. No. 144 at 21).

 While these issues raise legitimate concerns, the Court need not address them for purposes of the pending Motion. Indeed, whether Tennessee law allows monetary damages in an unlawful-restraint-of-trade action, whether the statute invoked by Plaintiffs applies to the Repayment Agreement, and whether the unlawful-restraint-of-trade subclass can seek both injunctive/declaratory relief and damages are questions of law common to this subclass and therefore proper for resolution on a class-wide basis. Further, a finding that the Third Amended Complaint does not plead a request for actual damages in connection with the unlawful-restraint-of-trade claim would not defeat predominance; it would dispose of this entire subclass and obviate the predominance requirement.

Overall, whether individualized issues of damages will predominate depends on Plaintiffs' ability to calculate any wage-suppression damages on a class-wide basis. For purposes of the pending Motion, the Court finds that Plaintiffs' expert report (Doc. No. 127-31) meets this burden.[10] Should the circumstances change, the Court will reconsider this matter. *In re Breast*

---

[10]     Inasmuch as Plaintiffs have pled and seek damages in the form of Repayment Agreement payments in connection with their unlawful-restraint-of-trade claim, the Court finds that any related issues will not

*Implant Litig.*, No. 92-3420, 1992 WL 739891, at *1 (6th Cir. May 22, 1992) ("Orders concerning class certification are inherently tentative in nature [and] may be revisited at any time prior to final judgment.")

### c. TILA

In a nutshell, "TILA requires that creditors make certain disclosures as to the terms of lending arrangements and provides for civil liability for failure to comply with its provisions." *Petroff-Kline*, 557 F.3d at 294 (citing 15 U.S.C. § 1640).[11] There is no dispute that whether SpecialtyCare has failed to make such disclosures can be resolved through generalized proof.

However, SpecialtyCare argues that individualized inquiries would predominate as to actual damages because the core question is whether each putative class member relied upon the purported lack of disclosures. (*See* Doc. No. 144 at 18).

> TILA § 1640(a) provides for two types of damage awards: statutory damages and actual damages . . . . and actual damages require a showing of detrimental reliance (*In re Smith*, 289 F.3d 1155, 1157 (9th Cir.2002) (per curiam), collecting cases, including our decision in *Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir.2000)). To establish detrimental reliance, the debtor must demonstrate that he or she would either have received a better interest rate for the loans elsewhere or would have elected not to take the loan had the required information been available.

*Petroff-Kline* at 296 (citation omitted). "In order to establish these actual damages, courts have required the plaintiff to show the TILA violation was the proximate cause of any actual damages." *Peters v. Jim Lupient Oldsmobile Co.*, 220 F.3d 915, 917 (8th Cir. 2000). Among other things, this "requires an individual assessment of what documents the customer reviewed and in what manner[.]" *Stout*, 228 F.3d at 718. Therefore, courts "increasingly refuse to [certify TILA claims]

---

predominate because the payments and their amounts have been recorded and are part of the record. (*See* generally Doc. No. 179-9).

[11] The Court set forth the specific elements of the surviving portion of Plaintiffs' TILA claim, which relies on a long list of statutory definitions, in its Memorandum on SpecialtyCare's Partial Motion to Dismiss. (*See* Doc. No. 189 at 12–18). The Court need not repeat these details here.

21

in actual damage cases." *Rockey*, 199 F.R.D. at 594 (collecting cases). Indeed, "[i]n light of the need to prove causation for each TILA plaintiff in a case for actual damages, individual issues predominate." *Id.* at 591 (collecting cases).

In their Reply, Plaintiffs rely on the rule that certification under Rule 23(b)(3) is permissible when liability questions common to the class predominate over damages questions proper to each putative class member. (*See* Doc. No. 147 at 5 (quoting *In re Whirlpool Corp.*, 722 F.3d at 861 ("a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members")). In *Rockey*, 199 F.R.D. at 592, the court rejected this argument on grounds that it "misses the mark" because "each plaintiff must prove, in addition to the amount of damages, causation in fact and reliance," meaning that "proof at trial must necessarily focus on whether each individual plaintiff read [understood, and relied upon] the TILA disclosure[s]." The Court concluded that "[c]ommon issues do not predominate where . . . the focus must be on minute aspects of individual transactions in order to establish liability." (*Id.* (collecting cases)). The Court finds this reasoning persuasive and likewise finds that the portion of the TILA claim based on actual damages does not meet the predominance requirement. Conversely, the Court finds that the portion of the TILA claim based on statutory damages meets the predominance requirement. *See id.*, at 594 ("If statutory damages had been available to plaintiff . . . without the requirements of detrimental reliance and proof of actual damages, Rule 23(b)(3) certification would be entirely appropriate.").[12]

---

[12]     This moots SpecialtyCare's argument that "Plaintiffs have not offered any evidence as to how evidence of [actual] damages would be calculated for the TILA claim." (Doc. No. 144 at 22).

2.    <u>Superiority</u>

To satisfy the superiority requirement, Plaintiffs must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In undertaking this analysis, the Court examines four factors:

> (A) The class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *see also Momenta Pharms., Inc.*, 333 F.R.D. at 403 (same).

The Court finds that the first two factors weigh in favor of class certification. First, the similarity of claims diminishes the class members' interest in controlling separate actions. Second, concentration of the claims in this Court and their common resolution is desirable, as it will streamline the resolution of the claims and conserve judicial and litigation resources. While Plaintiffs note that SpecialtyCare has initiated collections against multiple SNs and filed at least one lawsuit against a SN, Plaintiffs also proffer that "any lawsuit or collections effort has been paused for many if not all SNs pending the outcome of [the present] case." (Doc. No. 129 at 24). This is sufficient to satisfy the first and second factors.

As to the third factor, mirroring its arguments on predominance, SpecialtyCare raises concerns that individualized inquiries will impact the manageability of the class. (*See* Doc. No. 144 at 23). Given that the Court mitigated any such inquiries by narrowing the definition of and splitting the (b)(3) class into two subclasses, as well as for the reasons stated in addressing predominance (*see supra*, Subsection 1), the Court is not persuaded that substantial difficulties will arise in managing the class. As such, superiority is met.

### 3. Ascertainability

Under the ascertainability requirement, Plaintiffs must show "that the members of the class [are] *capable* of specific enumeration." *In re Flint Water Cases*, 499 F. Supp. 3d 399, 425–26 (E.D. Mich. 2021) (quoting *Cole*, 839 F.3d at 542 (emphasis in original)). This requirement is satisfied with a class description that is sufficiently definite so that it is administratively feasible for a court to determine whether a particular individual is a member by reference to objective criteria. *See Cole*, 839 F.3d. at 541; *Young*, 693 F.3d at 538–39; *Lyngaas v. Ag*, 992 F.3d 412, 428 (6th Cir. 2021).

Here, the Court has considered the (b)(3) class and finds that the class definition, as reshaped herein, is both definite and relies upon objective criteria to determine class membership. Indeed, the proposed definition was ascertainable. The Court excluded from the proposed definition: (1) from the entire class, SNs who signed general releases; and (2) from the unlawful-restraint-of-trade subclass, SNs who resigned within 30 days and those qualified for a contractual exception to the repayment obligation. (*see supra*, Subsection 1.a). The record in this case contains sufficient information to determine membership in these three exclusionary categories. (*See e.g.*, Doc. No. 143-12 at 11–12 (citations to record)). Thus, ascertainability is met.

### D. Notice

Plaintiffs seek approval and distribution of their proposed notice (Doc. No. 129-41). (*See* Doc. No. 129 at 25). SpecialtyCare opposes this request. (*See* Doc. No. 144 at 24). As for the (b)(2) class, the Court finds it premature to approve and distribute a class notice because of the pending Motion for Summary Judgment and Partial Motion to Dismiss (Doc. No. 180), which is potentially dispositive of this entire case. As for the (b)(3) class, Plaintiffs' request is moot because their

proposed notice is based on a now-obsolete class definition. Accordingly, the Court will deny Plaintiffs' request.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Rule 23 Class Certification (Doc. No. 128) will be **GRANTED** in part and **DENIED** in part. The Motion will be **GRANTED** as to the (b)(2) class, **GRANTED** as to the (b)(3) class as redefined above, and **DENIED** as to the notice.

An appropriate Order shall enter.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE