# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **NATHAN FUCHS, ET AL.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **NO. 3:23-cv-00892** |
| **v.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| **SPECIALTYCARE, INC.,** | ) | **MAGISTRATE JUDGE HOLMES** |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM</u>

Pending before the Court is Plaintiffs' motion for summary judgment (Doc. No. 175), and Defendant's cross motion for summary judgment and partial motion to dismiss (Doc. No. 180). The motions are fully briefed and ripe for consideration. (Doc. Nos. 193-2, 197-1, 203, 204). For the reasons discussed below, both motions (Doc. Nos. 175, 180) will be **DENIED**.

## I.       BACKGROUND[1]

Defendant is the nation's largest provider of intraoperative neuromonitoring ("IONM") services. (Pl. SOF ¶ 1). Defendant employs surgical neurophysiologists ("SNs") to provide IONM services at more than 1,200 hospitals around the country. (Pl. SOF ¶¶ 2-3). SNs observe patients' nervous system during surgeries that take place at Defendant's client-hospitals and monitor test results to alert doctors to signs of abnormal brain and nerve functioning. (Pl. SOF ¶ 4). Named

---

[1]       The facts are drawn from the Parties' Statements of Undisputed Material Facts and respective responses. For ease of reference, Plaintiffs' Statement of Undisputed Material Facts (Doc. No. 174-2), together with Defendant's response (Doc. No. 197-2) is cited as "Pl. SOF ¶ ____" and Defendant's Statement of Undisputed Material Facts (Doc. No. 182), together with Plaintiffs' response (Doc. No. 193-1), and Defendant's Further Statement of Undisputed Material Facts (Doc. No. 197-3), together with Plaintiffs' response (Doc. No. 205-1), is cited as "Def. SOF ¶ ____."

Plaintiffs Fuchs and Bailey are former SpecialtyCare employees who bring this action against Defendant on behalf of themselves and other SNs employed by Defendant.

Defendant hires entry-level SNs ("SN1s") who do not have prior IONM experience, as well as SNs that have prior IONM experience into roles higher than SN1, such as "SN2" or "SN3". (Pl. SOF ¶ 5). Defendant requires all SN1s to participate in an IONM training program with the goal of preparing employees to be successful SNs. (Pl. SOF ¶¶ 29, 32). An SN1 who completes the IONM training program can be promoted to an SN2. (Pl. SOF ¶ 6).

As a condition of employment, SNs are required to sign a training repayment agreement before beginning their employment as an SN1 (the "Repayment Agreement"). (Pl. SOF ¶¶ 9-10). The Repayment Agreement details the amount of reimbursement that an SN will owe Defendant if their employment is terminated within 3 years. (Def. SOF ¶ 7). The Repayment Agreement purports to reimburse Defendant for "training expenses." (Pl. SOF ¶ 59). Defendant's reasoning for the Repayment Agreement is to protect its "[p]roprietary practices and how [it] choose[s] to deliver [its] educational materials and things of that nature" and to "protect the investment that [Defendant] make[s] in that associate" so that the SN will "continue to provide care for and on behalf of [Defendant]." (Pl. SOF ¶ 19).

The Repayment Agreement states that: "[t]ermination of employment within thirty (30) days of the Commencement Date of the Agreement will require reimbursement of $15,000; [t]ermination of employment more than thirty (30) days, but no more than six (6) months, after the Commencement Date of the Agreement will require reimbursement of $15,000; [t]ermination of employment more than six (6) months, but no more than twelve (12) months, after the Commencement Date of the Agreement will require reimbursement of $20,000; [t]ermination of employment more than twelve (12) months, but no more than twenty four (24) months, after the

2

Commencement Date of the Agreement will require reimbursement of $25,000; [and] [t]ermination of employment more than twenty four (24) months, but no more than thirty six (36) months, after the Commencement Date of the Agreement will require reimbursement of $30,000." (Doc. No. 127-15 at PageID# 2051, Doc. No. 129-16 at PageID# 3136). The base annual salary for SN1s during the period from August 23, 2017 to the time the pending motions were filed was $35,000 or $40,000. (Pl. SOF ¶ 43). As of January 27, 2025, putative class members have paid Defendant a total of $233,511.97 under the Repayment Agreement. (Pl. SOF ¶ 99).

Plaintiffs bring claims against Defendant for violations of the FLSA and the Truth in Lending Act ("TILA"), unlawful restraint of trade, and an unenforceable liquidated damages provision.

Both parties move for summary judgment on all claims. Defendant also moves for dismissal of Plaintiffs' FLSA claims based on lack of subject-matter jurisdiction. The Court already dismissed Plaintiffs' FLSA claims in its Order entered on August 15, 2025 (Doc. No. 190) and accordingly, it need not address the FLSA claims herein.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary judgment movant has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence of the non-moving party's claim. *Id.*

3

In evaluating a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III.     ANALYSIS

**A. TILA (Count III)**

Plaintiffs claim that the Defendant violated TILA by failing to make required disclosures with regard to the Repayment Agreement. The parties dispute whether the Repayment Agreement falls within the disclosure requirements of TILA.

"TILA 'requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights.'" *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 274 (6th Cir. 2019). TILA defines a "private education loan" as "a loan provided by a private educational lender that-- (i) is not made, insured, or guaranteed under of Title IV of the Higher Education Act of 1965 []; and (ii) is issued expressly for postsecondary educational expenses to a borrower, regardless of whether the loan is provided through the educational institution that the subject student attends or directly to the borrower from the private educational lender…" 15 U.S.C. § 1650 (a)(8). Further,

under TILA, "postsecondary educational expenses" are "any of the expenses that are included as part of the cost of attendance of a student, as defined under section 472 of the Higher Education Act of 1965[]." 15 U.S.C. § 1650 (a)(5). TILA defines "finance charge" as the "sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a).

Here, Plaintiffs contend that the Repayment Agreement is a "private education loan" and that Defendant failed to make required TILA disclosures because the Repayment Agreement operates as a de facto finance charge since it purports to reimburse Defendant for its one-year training program, but the reimbursement amounts continue to increase after the completion of the training program. Plaintiffs contend that Defendant failed to identify the Repayment Agreement as a loan that increases over time or any interest, annual percentage rate, or finance charge.

Defendant argues that the Repayment Agreement is not subject to TILA's disclosure requirements because the Repayment Agreement is not a "private education loan" and that the Repayment Agreement does not include a finance charge.

The parties dispute several material facts as to Count III, including whether the Repayment Agreement was issued for "postsecondary educational expenses," the actual cost of the training, the duration of the training, and whether the increased repayment amounts were tied to Defendant's extension of training expenses. (Def. SOF ¶¶ 8, 10, 11, 12, 14, 15, 16, 25, 32, 33; Pl. SOF ¶¶ 14, 62; Doc. No. 181-2 ¶5; Doc. No. 174-3 at PageID# 5151-5152; Doc. No. 179-4 at 11; Doc. No. 179-4 at 20; Doc. No. 174-7 at PageID# 5221; Doc. No. 181-3 at PageID# 6754, 6756; Doc. No. 143-1 at PageID# 10172-10175; Doc. No. 127-32 at PageID# 10065-10067; Doc. No. 174-4 at PageID# 8016; Doc. No. 127-6 at PageID# 8953). Defendant contends that "Plaintiffs have not met their burden to show that the amounts set forth in the Repayment Agreement are incident to

5

the extension of credit, rather than tied directly to the costs of providing training in the IONM training program and throughout the SN1's first three years at SpecialtyCare" and acknowledges that "[t]he parties clearly dispute the actual cost of providing this training" and "[b]ecause the actual cost of training is material to whether the amount of reimbursement sought under the Repayment Agreement is a charge imposed as an incident to or a condition of the extension of credit, Plaintiffs are not entitled to summary judgment on their TILA claim." (Doc. No. 197-1 at 7). The Court agrees. Accordingly, summary judgment is denied as to Count III.

### B. Unlawful Restraint of Trade (Count IV)

Plaintiffs also argue that the Repayment Agreement is an unlawful restraint of trade because it imposes severe economic hardships on SNs if they choose to change jobs within 3 years of hire. Specifically, Plaintiffs contend that the starting salary for SN1s was between $35,000 - $40,000 and that they were subjected to either a $15,000 or $20,000 repayment obligation under the Repayment Agreement. (Doc. No. 174-1 at 5).

Under Tennessee law, whether agreements restricting competition are impermissible depends on whether they are reasonable under the circumstances. *See Allright Auto Parks, Inc. v. Berry*, 219 Tenn. 280, 285 (1966); *Hickory Specialties, Inc. v. Forest Flavors Int'l, Inc.*, 26 F. Supp. 2d 1029, 1032 (M.D. Tenn. 1998) (internal citation omitted) ("It is well established that agreements in restraint of trade, though not invalid per se, are disfavored in Tennessee and enforceable only if 'reasonable under the particular circumstances.'"). While "[t]here is no inflexible formula for deciding the ubiquitous question of reasonableness, insofar as noncompetitive covenants are concerned" and "[e]ach case must stand or fall on its own facts," "there are certain elements which should always be considered in ascertaining the reasonableness of such agreements" including: "the consideration supporting the agreements; the threatened danger to the employer in the absence

6

of such an agreement; the economic hardship imposed on the employee by such a covenant; and whether or not such a covenant should be inimical to public interest." *Allright*, 219 Tenn. 280 at 285. Moreover, "a threshold question is whether the employer has a legitimate business interest, *i.e.*, one that is properly protectable by a non-competition covenant." *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 644 (Tenn. Ct. App. 1999). "Considerations in determining whether an employee would have such an unfair advantage include (1) whether the employer provided the employee with specialized training; (2) whether the employee is given access to trade or business secrets or other confidential information; and (3) whether the employer's customers tend to associate the employer's business with the employee due to the employee's repeated contacts with the customers on behalf of the employer." *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 644 (Tenn. Ct. App. 1999) (internal citation omitted).

Here, Plaintiffs contend that they were less likely to seek other employment and received lower wages due to the Repayment Agreement. (Doc. No. 174-1 at 6). Plaintiffs contend that Defendant does not have a legitimate business interest in the Repayment Agreement. (Doc. No. 174-1 at 7). Plaintiffs also argue that Defendant's training program is not specialized or accredited and instead merely offers Plaintiffs "generalized knowledge."

Defendant argues that the Repayment Agreement is reasonable because it offers fair consideration, it has legitimate business interests, and the dangers posed by absence of the Repayment Agreement are significant, including forcing Defendant to spend time, resources, and money to replace an SN. (Doc. No. 197-1 at 9-11). Defendant contends that it provided specialized training to Plaintiffs and that the longer an SN remains employed, the greater the training costs incurred by Defendant and the greater the costs to replace SNs. (Doc. No. 197-1 at 9-11). Defendant also contends that Plaintiffs interact directly with patients and hospital staff and are

7

considered the "face" of the company in their roles, the economic hardships to Plaintiffs are outweighed by the reasonableness of the Repayment Agreement, and the Repayment Agreement "only asks SNs to reimburse SpecialtyCare for any training costs owed after employment has ended." (Doc. No. 197-1 at 11). Defendant contends that the Repayment Agreement comports with the public interest and benefits Plaintiffs by providing specialized training while simultaneously allowing them to earn wages. (Doc. No. 197-1 at 13).

Defendant also argues that the Repayment Agreement is not a non-compete agreement. In support of its argument, Defendant relies on *Heder v. City of Two Rivers,* 295 F.3d 777 (7th Cir. 2002) (applying Wisconsin law). The Court finds that *Heder* is distinguishable from the facts in the present case as it dealt with a specific state statute not at issue here. Moreover, Tennessee law makes clear that unlawful agreements restraining trade are not limited to non-compete agreements and have been recognized in other types of agreements. As the Court noted in its May 6, 2024 Order granting in part and denying in part Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint, "Tennessee courts have allowed [claims for unlawful restraint of trade] even in the absence of a noncompetition agreement; while most 'restraint of trade' cases addressed express restrictive covenants, those cases look to general policy considerations arising from concerns over unfair restraints of trade even without express restrictive covenants. However, such inquiries look to the reasonableness under particular circumstances." Doc. No. 68 at 11; *Affinion Benefits Grp., LLC v. Econ-O-Check Corp.*, 784 F. Supp. 2d 855, 866 (M.D. Tenn. 2011) ("[t]he contract clauses at issue here do not arise in the employment context…The 'same or similar' clauses, however, are clearly 'restraints on trade' and have the effect if not the form of a covenant not to compete…Although these provisions arise outside the employment context, and are entered into between companies with relatively more bargaining power than the average employee, they are

8

still restraints on trade, and the Court concludes that Tennessee courts, if called upon to consider these provisions, would view them in essentially the same light it views non-competes in the employment context."); *Spiegel v. Thomas, Mann & Smith, P.C.*, 811 S.W.2d 528, 530 (Tenn. 1991). Accordingly, a claim for unlawful restraint of trade may exist "even in the absence of noncompetition agreement" and Defendant's argument is unpersuasive.

A review of the record and the parties' briefs make clear that several disputes of material facts exist as to the reasonableness of the Repayment Agreement, including whether Defendant has a legitimate business interest. The parties dispute the contents of Defendant's training program and whether such contents are proprietary (Pl. SOF ¶ 20; Doc. No. 174-3 at PageID# 5150; Doc. Nos. 127-16 – 127-21), the certifications required for SNs to work with Defendant's clients (Pl. SOF ¶ 28; Doc. No. 174-3 at PageID# 5146), whether SNs are subject to supervision throughout their training program (Pl. SOF ¶¶ 34-38; Doc. No. 127-6 at PageID# 8956-8957, 8971, 8972; Doc. No. 127-24 at PageID# 2262; Doc. No. 127-16 at PageID# 9483, 9512; Doc. No. 127-21 at PageID# 9549), the economic hardship imposed on Plaintiffs – including whether Plaintiffs are restricted from finding alternative careers and whether the Repayment Agreement imposed restricted bargaining power on Plaintiffs (Pl. SOF ¶¶ 49, 50, 51, 52, 53, 55, 56, 57, 58; Doc. No. 127-25 at PageID# 9626; Doc. No. 127-14 at PageID# 9359-9360, 9366, 9379; Doc. No. 127-26 at PageID# 9699, 9704; Doc. No. 127-27 at PageID# 9766, 9773, 9780; Doc. No. 127-28 at PageID# 9849, 9850; Doc. No. 127-33 at PageID# 10102, 10103; Doc. No. 127-29 at PageID# 9904, 9905; Doc. No. 174-9 at PageID# 5292, 5294, 5295, 5298; Doc. No. 174-10 at PageID# 5355; Doc. No. 127-14 at PageID# 9395, 9398; Doc. No. 127-25 at PageID# 9645; Doc. No. 127-6 at PageID# 9714; Doc. No. 127-29 at PageID# 9911; Doc. No. 127-14 at PageID# 9362; Doc. No. 127-22; Doc. No. 127-23; Doc. No. 127-6 at PageID# 8978; Doc. No. 127-32) – and whether

9

training costs vary based on individuals and the resources required (Def. SOF ¶ 16; Doc. No. 127-5 at PageID# 8907; Doc. No. 127-6 at PageID# 8954-8955, 8963; Doc. No. 127-4 at PageID# 8869).  Neither party has shown the absence of genuine disputes of material facts as to Count IV. Rather, the parties' respective filings show that many of the material facts are genuinely disputed and are fact-intensive inquiries appropriate for the jury to decide. Accordingly, summary judgment will be denied as to Count IV.

**C. Liquidated Damages (Count V)**

Plaintiffs also seek a declaratory judgment that the Repayment Agreement is unlawful and unenforceable against them.

"Tennessee law recognizes that '[t]he individual right of freedom of contract is a vital aspect of personal liberty.'" *Baugh v. Novak*, 340 S.W.3d 372, 382 (Tenn. 2011) (internal citation omitted). "Among the limitations on the freedom to contract is that individuals can contract 'as they see fit so long as such a contract is not against public policy.'" *Id.* Moreover, "[t]he fundamental purpose of liquidated damages is to provide a means of compensation in the event of a breach where damages would be indeterminable or otherwise difficult to prove. By stipulating in the contract to the damages that might reasonably arise from a breach, the parties essentially estimate the amount of potential damages likely to be sustained by the nonbreaching party" and "[i]f the contract provision is a reasonable estimate of the damages that would occur from a breach, then the provision is normally construed as an enforceable stipulation for liquidated damages" but "if the stipulated amount is unreasonable in relation to those potential or estimated damages, then it will be treated as a penalty." *Teter v. Republic Parking Sys.*, 181 S.W.3d 330, 343 (Tenn. 2005).

When considering whether a liquidated damages provision is enforceable, Tennessee uses "the 'prospective approach,' which 'focuses on the estimation of potential damages and the

circumstances that existed at the time of contract formation.'" *SH Nashville, LLC v. FWREF Nashville Airport, LLC*, 2024 WL 3880089, at *9 (Tenn. Ct. App., 2024) (internal citation omitted). "In adopting the prospective approach to evaluating liquidated damages, the Supreme Court recognized the importance of two interests: 'the freedom of parties to bargain for and to agree upon terms such as liquidated damages and the limitations set by public policy.'" *Id.* (internal citation omitted). A liquidated damages provision will generally be enforceable if (1) "the liquidated sum is a reasonable prediction of potential damages" and (2) "the damages are indeterminable or difficult to ascertain at the time of contract formation." *Id.* (internal citation omitted).

Here, Plaintiffs contend that the Repayment Agreement is an unenforceable penalty and not a reasonable estimate of Defendant's potential damages from SNs leaving their employment before three years. (Doc. No. 174-1 at 23). Plaintiffs argue that the Repayment Agreement imposes a repayment amount that is "nearly double" Defendant's training costs. *Id.* Plaintiffs also contend that the repayment amounts "wholly disregard that SNs provide services and generate revenue for SpecialtyCare for the majority of their first year of employment and the entirety of their second and third years of employment," yet the repayment amounts continue to increase after the conclusion of the training. *Id.* at 24. Plaintiffs argue that at the time the parties entered into the Repayment Agreement, any actual damages were easily measurable and that the Repayment Agreement "serves to punish a breach." *Id.* at 25.

Defendant contends that Plaintiffs' liquidated damages claim is not a standalone cause of action and instead is often analyzed as an affirmative defense to a breach of contract claim. (Doc. No. 182 at 19). Defendant argues that to the extent Plaintiffs bring the liquidated damages claim as a declaratory judgment action, no live controversy exists and Plaintiffs prematurely

11

"manufacture a preemptive declaratory judgment action, seeking to prevail on an affirmative defense before the underlying suit is even brought," as Defendant has not brought breach of contract actions against Plaintiffs. *Id.* at 21. Defendant also argues that the Repayment Agreement is not an unenforceable penalty and that liquidated damages tied to training employees are not uncommon. Defendant maintains that actual damages were difficult to determine at the time the parties entered into the Repayment Agreement as the exact training costs varied based on the individual, the cost of replacing SNs varied based on market conditions at the time, and there is a shortage of SNs so obtaining a replacement is difficult. Defendant argues that the repayment amounts are a reasonable estimate of potential damages because even the highest repayment amount in the Repayment Agreement – $30,000 – is less than the training costs incurred by Defendant.

With respect to Defendant's argument that this claim is not ripe, it is undisputed that as of January 27, 2025, putative class members paid Defendant $233,511.97 under the Repayment Agreement. (Pl. SOF ¶¶ 99, 105). It is also undisputed that absent payment or a payment plan approved by Defendant, Defendant sends its collections agent to collect the repayment amounts. (*Id.* ¶104). There is also evidence in the record that Defendant sent written demands for payment and informed many putative class members that if payment was not made Defendant "will have no other option other than to take legal action against you to collect the amount owed." (Doc. No. 195 at 12, Doc. No. 194-2). There is sufficient evidence in the record demonstrating that an actual case or controversy exists. *Ft. Sanders Regl. Med. Ctr. v. Am. Anesthesiology of Tennessee, P.C.*, No. E2023-01340-COA-R3-CV, 2024 WL 4765114, at *4 (Tenn. Ct. App. Nov. 13, 2024). Accordingly, the Court finds that the declaratory judgment action is ripe, and Defendant's argument that it is premature is unpersuasive.

Moreover, the parties clearly dispute whether the Repayment Agreement is a reasonable prediction of potential damages and whether the damages were difficult to ascertain at the time the parties entered into the Repayment Agreement. The parties also dispute whether the repayment amounts are related to the training expenses incurred by Defendant, whether such amounts continued to increase after completion of the one-year training program, and the value and revenue from SNs' work during and after training. (Def. SOF ¶ 8; Doc. No. 127-4 at PageID# 8869, 8870; Doc. No. 127-15; Doc. No. 127-6 at PageID# 8957, 8971; Doc. No. 174-7 at PageID# 5204, 5218). The parties also dispute whether there are differing repayment amounts because employees received more training and competencies the longer they worked at Defendant, whether the increase in repayment amounts aligned with employees' earnings growth potential, whether the repayment amounts are greater than the training costs incurred by Defendant, and costs for replacing an SN. (Def. SOF ¶¶ 10,11, 14, 15, 16, 25, 34, 35, 38; Pl. SOF ¶¶ 14, 21, 34-38, 41; Doc. No. 174-3 at PageID# 5151-5152, Doc. No. 174-4, Doc. No. 179-5, Doc. No. 174-7 at PageID# 5217; Doc. No. 127-6 at PageID# 8956-8957, 8971-8972; Doc. No. 127-24 at PageID# 2262; Doc. No. 127-16 at PageID# 9483, 9512, 9549; Doc. No. 181-2 ¶¶ 5, 7, 10; Doc. No. 127-32).

Neither party has shown the absence of genuine disputes of material facts as to Count V. Accordingly, summary judgment will be denied as to Count V.

An appropriate Order will enter.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE